OPINION OF THE COURT
John E.H. Stackhouse, J.
JPMorgan Chase, N.A., the temporary guardian of the property of Brooke Astor, moves to expand its powers beyond those granted by the court’s July 21, 2006 order. Specifically, the bank seeks to conduct testimonial and document discovery of parties and third parties concerning recent transfers from Mrs. Astor’s assets, and to commence litigation to recover assets, if appropriate. The bank also seeks approval for the continued retention of the firm of Eisner LLP to conduct accounting work, including forensic analysis.
Anthony Marshall opposes the motion, arguing that the bank has exceeded its limited role as temporary custodian of his mother’s property, which he contends should be limited to paying her expenses and preserving the status quo until the underlying issues in the guardianship proceeding are determined. Anthony Marshall also cross-moves to modify the July 21st order to permit him to appear in this matter in his capacity as attorney-in-fact for his mother pursuant to the powers of attorney previously given to him, and for other items of relief as further addressed herein.
Petitioner Phillip Marshall opposes his father’s cross motion, arguing that it is procedurally defective, relies on evidence which the court ordered destroyed, and requests relief that is untimely, inappropriate, or mooted by procedures already put in place by the court.
The Bank’s Motion for Expanded Powers
Pursuant to Mental Hygiene Law § 81.23 and Banking Law § 100, the bank was appointed temporary guardian of the property of Brooke Astor by the court’s July 21st order. That order granted the bank specific enumerated powers to pay for Mrs. Astor’s interim medical care, housing, relocation to her home in Briarcliff Manor, and other personal needs, as well as the power to marshal her income and assets and to hire professionals to carry out its duties.
*864 The bank argues that a review of the financial information gathered to date suggests that formal discovery and, possibly litigation, must be undertaken in the best interests of Mrs. Astor to marshal her assets in the discharge of the bank’s fiduciary obligations. The bank submits an affidavit from a principal of Eisner LLP, hired to assist the bank in this matter, who contends that transfers of assets were made, not for the benefit of Mrs. Astor, but for the benefit of her son, Anthony Marshall, or his wife, Charlene Marshall, or entities he owned or controlled, and that these transfers cannot legitimately be explained. The transactions in question occurred between 2002 and 2006 and total approximately $18 million. They include a fourfold increase in the compensation Anthony Marshall received as his mother’s financial manager; a $2 million commission he paid himself in 2002 on the $10 million sale of his mother’s Childe Hassan painting; the transfer of $9 million of Mrs. Astor’s real property and securities as gifts to himself in 2003; the use of Mrs. Astor’s funds to pay for the Marshalls’ personal, residential, and household expenses; and the investment of $1 million of his mother’s funds in his theatrical ventures as purported investments in 2002 and 2003.
The bank thus asks the court for the power to conduct wide-reaching discovery of the disposition of Mrs. Astor’s assets in the last several years by serving deposition notices and document requests upon parties to this proceeding pursuant to CPLR 3101 and 3102, and to issue subpoenas ad testificandum and subpoenas duces tecum to third parties pursuant to CPLR 2301 and 2302. The bank also requests an order approving its continued retention of the firm of Eisner LLR through counsel, to conduct accounting work, including forensic analysis. Finally, the bank asks this court to authorize it to commence litigation, if appropriate, to recover Mrs. Astor’s assets.
The bank’s request for expanded powers to conduct discovery and commence litigation is denied, as the relief sought appears both overly zealous and premature at this time however well intentioned. The bank was appointed to serve in a limited role as the temporary custodian of Mrs. Astor’s property, paying her expenses and marshaling her assets to preserve the status quo until the underlying issues in the guardianship proceeding are determined. (Cf. Matter of Hoysradt, 188 App Div 515, 515 [2d Dept 1919] [powers of a “temporary administrator” are to preserve, not to administer, the estate].) The appointment was a provisional remedy (Mental Hygiene Law § 81.23), which must *865 be strictly construed and limited due to the deprivation of rights that occur prior to a final adjudication on the merits of the petition. (See Siegel, NY Prac § 307, at 470 [3d ed].)
The bank fails to identify any property of Mrs. Astor that realistically could be lost during the pendency of this proceeding, or to adequately justify the need for additional litigation at this time. While the propriety of the transfers of money and property to Anthony and Charlene Marshall is a key subject of the guardianship proceeding, it is not the bank’s role to prove or disprove any of the allegations of the petition, and there has been no showing that the Marshalls are dissipating or secreting any of their assets to avoid the possibility of repayment should the transfers prove to be improper. Anthony Marshall no longer has control over Mrs. Astor’s office at 405 Park Avenue, her apartment at 778 Park Avenue, and her home in Briarcliff Manor. The bank is already in possession of most of her financial papers, and Anthony Marshall has recently turned over to the bank additional documents in his possession.
The broad, CPLR-type discovery sought is inconsistent with the extremely short time frame in which a guardianship proceeding is supposed to be conducted and determined. (See Mental Hygiene Law § 81.07 [a]; § 81.13; see also CPLR 408 [disclosure in a special proceeding not allowed without leave of court].) Indeed, the bank does not make any attempt to identify or limit the discovery it seeks in its moving papers. And while the bank zeroes in on Anthony and Charlene Marshall in their reply papers, it would be manifestly unfair to allow depositions of only one side in this controversy.
Finally, the court is concerned that the discovery sought will unnecessarily increase the cost of this proceeding and distract the parties from preparing for the hearing, presently scheduled to commence on October 13, 2006.
In its reply papers, the bank contends that it must file income and gift tax returns on behalf of Mrs. Astor by October 15th and “may” require information from Anthony Marshall in order that the returns may be accurate.[1] This claim is too vague to support the requested discovery, and there is no showing that deposing Anthony Marshall under oath will be necessary to elicit whatever tax information is required. Second, the bank *866 contends that there is evidence that, in the weeks prior to this proceeding, Anthony Marshall ordered the destruction of 95 cartons of documents from Mrs. Astor’s residences, and further delay risks further document destruction. Anthony Marshall admits that he recently culled through more than 40 years worth of his mother’s papers, but denies shredding any of her financial papers for nefarious purposes, pointing out that he had no advance knowledge this proceeding would be commenced. Inasmuch as the bank is now in control of these residences, there is no risk of additional document destruction.
In Matter of Siracusano (167 Misc 2d 130 [Sup Ct, NY County 1995]), upon which the bank relies, a temporary guardian had been appointed for a ward whose major asset was a seriously underinsured Stradivarius violin that had been stolen prior to the guardian’s appointment, and thus the guardian was given the power to offer a reward and to continue to facilitate the investigations being conducted by the FBI and police, even after the ward’s death. This relief was clearly appropriate in that unique situation to prevent against the permanent loss of the estate’s major asset, and is completely distinguishable from the present matter. Matter of Parente (11 Misc 3d 1066[A], 2005 NY Slip Op 52285[U] [Sup Ct, Nassau County 2005]) is equally distinguishable, as the court appears to have authorized the guardian to conduct a single deposition pursuant to Mental Hygiene Law § 81.43, and only after a hearing on the guardianship petition had been held, at which the alleged incompetent person (AIP) had consented to the appointment of a guardian.
Accordingly, the bank’s motion for expanded powers to conduct discovery and commence litigation is denied without prejudice. However, due to the volume of financial documents thus far produced, the continued retention of Eisner LLP appears warranted.
Anthony Marshall’s Cross Motion
Both the bank and petitioner argue that Anthony Marshall lacks standing to make a cross motion because he is not a party to this proceeding. They argue that this is a special proceeding under CPLR 401, which states that the parties to a special proceeding are the petitioner and the respondent — here, Phillip Marshall and Mrs. Astor, respectively.[2]
However, CPLR 401 states that “any adverse party” is referred to as “respondent.” Mr. Anthony Marshall, as the adult *867 son and sole presumptive distributee of the AIP and holder of a power of attorney and health care proxy, is a person who is entitled to legal notice of this proceeding by virtue of Mental Hygiene Law § 81.07 (g), was directly affected by the temporary restraining orders issued by the court on July 21, 2006, and is clearly the most interested person in this proceeding, other than the AIR He filed a notice of appearance in this proceeding in July, and has been treated by counsel and the court as a party to the proceeding. The court will not elevate form over substance by ruling that he lacks standing to make appropriate motions by virtue of the fact that he has not yet filed a cross petition, which was not due, by order of this court, until 10 days following his receipt of Mrs. Astor’s medical and financial records.
Matter of Allen (10 Misc 3d 1072[A], 2005 NY Slip Op 6224[U] [Sup Ct, Tompkins County 2005]) is unpersuasive and factually distinguishable. In that case, the brother of the AIP never filed a cross petition and sought to intervene by filing an answer to the petition only after a guardianship hearing had been held and a niece and nephew of the AIP were appointed his guardians.
The temporary guardian of the person, Annette de la Renta, complains that the cross motion seeks relief against herself, a nonmoving party. This is, at most, a technical defect that does not prevent consideration of the cross motion, where there is no prejudice and everyone interested in this proceeding was served with the cross motion and had an opportunity to be héard on the merits. (Volpe v Canfield, 237 AD2d 282, 283 [2d Dept 1997], lv denied 90 NY2d 802 [1997].) There is only one item of relief against Mrs. de la Renta, a request that she regularly and timely inform Anthony Marshall as to the treatment, condition and whereabouts of his mother. This request appears eminently reasonable to the court, and is granted.
Anthony Marshall moves this court for an order modifying that branch of the July 21, 2006 order, which restrained and enjoined him from acting as attorney-in-fact for Mrs. Astor “to the extent of permitting Mr. Marshall to also appear in this matter, by the undersigned counsel, in his capacity as Attorney-in-Fact for Brooke Astor, pursuant to powers of attorney given to him by her.” His attorney contends that this relief is aimed at restoring some measure of balance to this proceeding, and to honoring the explicit wishes of Mrs. Astor. This request is denied. The truth or falsity of the allegations in the petition *868 and supporting affidavits is more properly addressed at the hearing.
Turning to the merits of his other requests, designated as paragraphs C through K in his notice of cross motion, the court rules as follows:
(C) permitting a doctor on behalf of Anthony Marshall to examine Mrs. Astor promptly to ascertain her condition — denied, as there is no showing that this is in the best interests of Mrs. Astor;
(D) directing the immediate production of Mrs. Astor’s medical records by Dr. Rees Pritchett and to speak to Dr. Pritchett— denied as moot with respect to the medical records, and denied to the extent that it seeks a deposition of Dr. Pritchett;
(E) permitting Anthony Marshall’s secretary access to the computers at 405 Park Avenue for the purpose of reviewing and copying transactions involving Mrs. Astor — denied on the ground that copies of the computer hard drives are being prepared by the bank for distribution to all parties;
(F) permitting Anthony Marshall and his secretary access to the computer located in the downstairs office at 778 Park Avenue — denied on the ground that copies of the hard drive are being prepared by the bank for distribution to all parties;
(G) prohibiting access to the personal records of Anthony and Charlene Marshall — denied on the ground that a protocol is already in place;
(H) permitting Anthony Marshall to inventory and inspect the contents of Mrs. Astor’s homes located at 778 Park Avenue in Manhattan and Holly Hill in Briarcliff Manor — denied;
(I) directing the temporary guardian to preserve for inspection and production at trial the couch in the Blue Room, as referenced in the petition — granted;
(J) directing petitioner and the bank to advise Anthony Marshall’s counsel reasonably in advance of any change or repair of conditions in Mrs. Astor’s residences that is the basis for any complaint made against Anthony Marshall — granted;
(K) an order precluding from trial any claim against Anthony Marshall regarding any condition in the premises of Mrs. Astor, where such condition has been changed since the filing of the petition herein — denied without prejudice to renewal at the hearing.
One final point: Petitioner has objected to the fact that the cross motion is supported by photographs of Mrs. Astor’s apart *869 ment and some personal belongings, arguing that this court previously ordered all photographs to be destroyed. However, the order issued at the August 2nd conference was raised in connection with counsel for Anthony Marshall objecting to petitioner’s counsel photographing documents on a desk that Mr. Marshall used in the apartment. The directive was never intended by the court to apply to photographic evidence of the physical condition of and furnishings and personal effects in Mrs. Astor’s apartment, clearly relevant to the issues raised in this proceeding.

. The court has only considered these new factual claims because counsel for Anthony Marshall was allowed the opportunity to submit a sur-reply in farther opposition to the bank’s motion.

. If the court were to accept this argument, then it would also he forced to deny the bank’s motion-in-chief for lack of standing.